Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on for hearing this morning. First up, 23-2097 Williams v. Martorello. Mr. Gordon. May it please the Court, there are three reasons why the judgment in this case must be reversed. First, loans that are firmly rooted on an Indian reservation that are made on the reservation by an arm of the tribe cannot be outlawed by the state where the borrower resides. Second, the legality of the loans cannot be adjudicated in the absence of the tribal lender and the tribe itself, both of whom possess sovereign immunity. Third, RICO is not a strict liability offense and Mr. Martorello cannot be found liable for violating RICO without proof that he knew that the loans were illegal and that the interest charged was at least twice the enforceable rate. I'll turn first to the issue of the governing law here. The court below ruled that, in essence, that all tribal lending conducted via the Internet is off-reservation conduct that is subject to state regulation and it relied on this court's decision in Hengel, but Hengel did not reach or decide that issue. The issue in Hengel was whether the court had jurisdiction over the parties in front of it who claimed immunity and the court in Hengel said, based on the allegations in the complaint, that it had jurisdiction, the tribal officials or members sued for prospective relief and therefore amenable to suit under an experted young theory, and number two, because the complaint sufficiently alleged conduct that could be considered off-reservation conduct and therefore would give rise to jurisdiction. That was the only issue before the court in Hengel. That was the only issue it decided. It did not allow the court to decide that all tribal lending via the Internet is off jurisdiction and indeed, had it said that, it would have been announcing a rule that is contrary to the view that the Supreme Court has taken and other courts have taken for many years in loans that are across jurisdiction. The Supreme Court . . . What about the line in the Hengel decision where this court finds that the activities are directly analogous to the lending activity that other courts have found to clearly constitute off-reservation conduct subject to non-discriminatory state regulation? Yes, Your Honor. That's what the court said in Hengel. That was in the context of deciding whether the allegations in the complaint . . . Right. Why wouldn't that principle also apply here? Because, Your Honor, the Supreme Court in Marquette, for example, has said that a bank in Nebraska that provided high-interest credit cards to customers in Minnesota was extending credit in Nebraska, not in Minnesota, and therefore that the Minnesota usury laws were inapplicable to it. The Supreme Court said a hundred years ago in the Seaman case that a lender is free to extend loans that are legal in its jurisdiction to a borrower in another jurisdiction and that that is proper. The notion that in Hengel, in a case on an issue that was not directly before it, the court decided that all internet lending by a tribe is governed by the law of the state where the borrower resides is directly contrary to those principles. It's contrary to the restatement, the restatement of conflicts, which we have not suggested governs here because this is commerce with an Indian tribe, which is therefore subject to constitutional limitations. But just in a restatement situation, the governing principle under Section 195 is that the law of the jurisdiction where the loan is to be repaid is presumptively the governing law. Can I follow up on that, Mr. Gordon? Is it your view that Hengel was incorrectly decided or that portion of the opinion that Judge Agee just described is dicta? What's your view about the importance of language? We don't quarrel at all with the holding in Hengel. We think that the holding in Hengel is absolutely correct. But Hengel was not considering a choice of law issue. It was simply considering whether the allegations in the complaint were sufficient for the court to assert jurisdiction over the parties in front of it who claimed immunity. And those allegations were sufficient. But the choice of law issue is a fact-bounding inquiry that's not made on a motion to dismiss, which is what was at stake in Hengel. Well, I guess what I'm asking is the statement that the sentence or the phrase that Judge Agee just quoted to you in Hengel, is it your view that that's just an incorrect statement of the law? The cases that it cited, Your Honor, if you dig into them, really don't address the issue. They cite the Second Circuit decision, for example, in Gingras, which says broadly that a tribe engages in off-reservation conduct when it extends credit to a customer, a borrower, in a state. But that's directly contrary. The Second Circuit, that's just a flat statement. The Second Circuit doesn't provide any rationale for it. That statement is at odds with Marquette, where, as I said, the Supreme Court said no, the credit's being extended where the lender is located, not where the borrower resides. And also, that statement in Gingras takes no account of that court's own prior ruling in the Otoe, Missouri case, which we cite. That panel, first of all, couldn't have overruled Otoe, Missouri, and it didn't purport to. And Otoe, Missouri, which we submit is the precedent that's on point here, directly considered the issue that is now before this court, which is a tribal lender making a loan to a customer, a borrower in a state, another jurisdiction, where the transaction's conducted via the internet. And the Second Circuit took that head-on and said, under the Supreme Court's precedents, whether the state can regulate that has to be resolved through a Bracker analysis. And it said that on the facts before it, which were limited because it was an appeal from a preliminary injunction with a very limited record, it said that the evidence wasn't sufficient in that case to establish that the loans were sufficiently rooted on the reservation. Does it matter that you're . . . is it legally significant that the person being held to account here is not a tribal member? No, Your Honor, because the issue here is the tribe's rights, not Mr. Margarello's rights. The issue here is whether the tribe can proceed with this conduct. These loans are being made not by Mr. Margarello, they're being made by an arm of the tribe on the reservation. As this court found in 2019, the lending business is very important to the tribe and to the reservation, and it was vital to its economic development. And the issue here is whether those loans can be outlawed by the states where the borrowers reside. And in order to . . . Well, that may not apply to the . . . arguably to the tribes, but as Judge Diaz just indicated, Mr. Margarello is not a member of the tribe, and he's the one who's here. That's correct, Your Honor, but the governing law would be the governing law. The law that governs those loans, which we submit as tribal law, is going to be the same regardless of who's raising the issue. Let me turn to the second argument. The legality of these loans cannot be adjudicated in the case against Mr. Margarello in the absence of the lender itself, big picture, and the tribe, and dissension, all of whom have sovereign immunity. The law is uniform and the Supreme Court has held that when a required party is a sovereign that's not amenable to jurisdiction, the case must be dismissed. So once . . . this court ruled in 2019 that big picture and dissension have immunity, and the tribe clearly has immunity. Indeed, it was pursued. Those three parties were absent from the case, and the case cannot proceed in their absence. The court below simply ignored the applicable law in ruling otherwise. Why are they both necessary and indispensable? They're necessary because it's the tribal lender, Your Honor. The legality of loans can't be adjudicated in the absence of the lender. Also, this court in Yeshenko has said that the tribe has interests that make it a required party in this sort of situation where a contract that is governed by its laws, or at least potentially governed by its laws, is at issue. That's your argument for indispensable too? I'm sorry, Your Honor? That's your argument for being indispensable is . . . Well, the Supreme Court in Pimentel has said flatly that when a required party has sovereign immunity, that the case cannot proceed. It must be  So you think that's a per se? That's per se? That anybody who's adjoined with them in loan activity clearly, automatically, per se, is necessary and indispensable. Is that your argument? The Ninth Circuit has said, without calling it per se, has said that very little analysis is required when the required party has sovereign immunity, that that in and of itself is sufficient. So what effect does the prior settlement with these parties have on this particular issue? The settlement, Your Honor, is inapplicable here. First of all, the tribe, which is one of the required parties, is not party to the settlement agreement. Second of all . . . And the tribe has not sought leave to participate in this case? Nor is that required under Rule 19, Your Honor. I understand that, but I mean, if they had rights to defend, it would seem like that they would have taken some action. Well, Your Honor, their whole point is that they're immune and that they shouldn't have to be bothered with this. The First Circuit has clearly explained, and we've cited it in our brief, that no action is required by the absent party. Beyond that, to continue with the answer, the ascension in big picture did not settle out of this case. They were dismissed from this case pursuant to this court's mandate in 2019, although the district court waited six months to do it until after the settlement agreement was entered into. Third, turning to the third argument, the court has imposed a $44 million judgment on Mr. Martorello for violating RICO, for engaging in unlawful debt without any proof that Mr. Martorello knew that the loans were illegal and were twice the applicable interest rate. And in the face of uncontested evidence that Mr. Martorello had advice of counsel that the loans were illegal. The court simply said that Mr. Martorello's knowledge and good faith and reliance on the advice of counsel were irrelevant because the RICO unlawful debt offense is essentially strict liability. And that, again, is not the law. There is no case, none, that has ever held that. And indeed . . . Do you have a civil RICO case that adopts your position? I have Supreme Court law that says that a case, that when you're talking about a statute, Your Honor, that is both civil and criminal as RICO is, that it must be interpreted uniformly in both contexts. And that is what we rely on here. This is, indeed, a civil case. But the construction of what a RICO, the RICO offense is defined in exactly the same way, regardless of whether it's a civil or a criminal penalty. And the court below held that when you're talking about the unlawful debt offense, that you don't need any knowledge or intent. If the loan, if the debt turns out to be illegal and at twice the enforceable rate, even if you didn't know it, you are liable. And in a criminal context, that would mean you're guilty and could go to jail for up to 20 years. And that is not the law. The Supreme Court has made very clear that knowledge is required, scienter is required, so that people aren't subject to criminal sanctions for otherwise innocent conduct, unless they knew that the conduct was illegal. Isn't the default rule, though, generally that ignorance of the law is not a defense? But we've cited the case law here, including Supreme Court law, saying that mistake of law is, indeed, a defense in this context, Your Honor. In the criminal context? Yes, Your Honor. The Rehave case, Supreme Court decision within the last six years. All right. Thank you very much, Mr. Gordon. Thank you, Your Honor. Mr. Wessler. Thank you. May it please the Court. Matthew Wessler for the plaintiff's appellees. Two years ago, in the course of rejecting his last appeal, this Court held that Mr. Martorello had lied about his ongoing role in the illegal lending enterprise that he created to sell predatory loans to Virginia consumers. These loans carried upwards of 1,300% interest rates, even though Virginia caps those rates at 12%, and Mr. Martorello himself profited off the scheme to the tune of nearly $100 million. In rejecting his appeal, this Court also cleared the way for the Virginia consumers in this case to prove that because Mr. Martorello participated in and controlled the direction of the lending operation, he was liable under RICO. On remand, the plaintiffs did just that, and Mr. Martorello concedes that the record evidence in this case establishes virtually every element for both causation and damages. Instead of contesting any of the facts regarding his role, he now makes three legal arguments in a final attempt to escape liability. But as the discussion today points up, his first argument is foreclosed by this Court's decision in Hengel. And just to be specific about Hengel, there this Court rejected an identical argument. The lenders in that case had argued that because the loan was, quote, allegedly made and accepted on tribal land, it was governed by tribal, not state law. This Court said that's wrong, and it held instead, consistent with every other circuit to have considered the issue, that online lending is, quote, clearly constitutes off-reservation conduct and is therefore subject to state, not tribal, law. Your colleague on the other side mentioned or referenced some Supreme Court cases in the context of non-tribal lending activity, commercial banks that are incorporated in one state and lend in another, and that the Supreme Court has held or suggested that those loans would be governed by the state in which the bank had been incorporated or was doing business. How do those cases, if at all, apply in this context? I don't think they do apply in this context because the question of tribal law versus state law is different. Even my friend on the other side acknowledges that the inquiry, even assuming that you would consider the activity to take place on the reservation, the inquiry follows the Bracker test, which is a distinct test developed in this space that is outside the scope of the way that it works when you're talking about one state versus another state. But I think really the signpost for this court is Hengel, which went through in detail the inquiry that is required when a party is making an argument that the activity ought to be considered on tribal land. And what it held, and just to be really specific, this is at pages 348 and 349 of the decision, is that the inquiry does not turn on where the loans were allegedly made or accepted. In Hengel, this court identified 5 factors that it said... Before you get to Hengel, sir, are you saying that because we're dealing with tribal lending, those cases that Mr. Gordon referred to with respect to non-tribal lenders just doesn't apply? I think that's correct. Why would that be? Well, because the inquiry, it's a separate inquiry. Tribal law is treated differently from state law. The reason is because of the sovereign interest concerns that attach to the tribe when it is attempting to create economic activity on its tribal land. And so in those situations, neither federal nor state law would apply to its on-tribal activity. But what the Supreme Court has said in the context of tribal activity is when the tribe or tribal members go outside the reservation and pursue their conduct in states, they are subject to non-discriminatory state law. And that's the approach that this court... Does it make a difference in that analysis that Mr. Mercurillo is not a member of the tribe? We think it heightens the conclusion that in this case the activity can't be considered on-reservation conduct. It would be, I think, quite odd to be in a position where, as this court said in Hengel, the activity is considered off-reservation for tribal officials, but it is somehow not considered off-reservation activity for a non-tribal individual. The key inquiry in this context is a series of five elements that this court identified in Hengel. It asked, first, does the defendant market the loans throughout the country, including Virginia? That was in Hengel, the first one. The second one is whether the plaintiffs reside on non-Indian land when they applied for the loans online. The third is whether defendants collect payments from the plaintiffs while they reside in Virginia, whether the plaintiffs' bank accounts are located in Virginia, and whether the effects of the illegal lending are felt by the plaintiffs in Virginia. There isn't any dispute here that all of those factors are satisfied. There's a pretty straightforward application of this court's decision in Hengel to this question here. Those factors would be satisfied following upon the chief's question. It's interesting that categorically, just because it's a tribal nation involved, it should be treated differently in terms of a state. You seem comfortable with the fact that you don't take issue with your learning. A colleague says that when it's one state, we're going to keep it. The law applies there, no matter the fact Why should it be treated differently? It seems to me that tribal would have more autonomy than states would in that sense. Is that some kind of discrimination here? No, I don't think so. If you had a situation where you had a lender who had erected this kind of lending scheme in one state and then directed their lending activities into another state, that second state, in the same way that it would happen here, would apply its nondiscriminatory state law to that lender. A lender cannot escape, for instance, a Virginia interest rate cap, which is 12%, by incorporating its lending in Minnesota but nevertheless directing its lending activities in Virginia. There's the same rule that is going to apply in this context. In what case is that you're citing? I don't have a case for that. You're citing yourself. I think that's the application of nondiscriminatory state law. The whole idea is that it's nondiscriminatory. It applies regardless of who the party is that's violating that law, whether it's a tribal official, whether it's someone like Mr. Martorello who is responsible for originating and collecting these loans, or whether it's someone from a different state. Either way, that nondiscriminatory state law will apply if the activities are directed into that state. There is, again, no dispute here that all of the activities, the collection of the loan, the origination of the loan, the attachment of the plaintiff's bank accounts that all took place in Virginia. We really are foursquare with what this court said about the nature of the controlling law is in Hengel, which is that, just a quote from Hengel, substantive state law applies, and lending activities like this are considered off-reservation conduct. It drew no distinction in that case between the identity of the parties, whether it was a tribal official or anybody else. The court also drew no distinction between the nature of the claims. In that case, the claims at issue were injunctive-focused claims, but it doesn't matter here the claims are damages. Either way, when you direct your activity into a state under this court's case law and also under controlling Supreme Court precedent, Bay, Mills, and Wagnon, if you direct your activity into the state, you are subject to the nondiscriminatory state law just like anybody else. I'm sorry to beat this horse, but I have a recollection that many lenders incorporate or base their operations in one of the two Dakotas, I forget which one, because of the fact that those interest rates in the Dakotas are much higher and allowed to be much higher in that state and then project their business into other jurisdictions. Is it your view that they would be subject to the lower user rates in those states and there be an anti-discrimination complaint against those lenders? Well, I think it depends on the facts of those cases. So, for instance, if those lenders had a choice of law clause that specified North or South Dakota law, you might be in a different situation. But I think if you are outside of a world in which the contract specifies which law governs, I don't think you could escape the application of Virginia law by directing your activities into the state. I also say here that what we're talking about is a federal RICO claim, and one distinction that exists between Judge Dee as your hypothetical example of a North Dakota or South Dakota lender and a tribal lender is that the tribe takes the position that it is immune from federal law. A North Dakota lender who is violating RICO could not escape accountability or liability under RICO simply by incorporating in that state. And so I think there is this distinction that I think Hengel recognizes, which is that tribes are in a different position in some respects at least to lenders who are operating their enterprise in a state. If I could turn... But isn't that makes it more important in terms of the other case of indispensable? You're talking about whether or not it was on reservation activity or not, that they need to be here to determine what in fact they do, isn't it? Doesn't that dovetail back to counsel's argument? If I could respond to this question about Rule 19... Is that my question I just asked you? You can. Thank you. So, I mean, there are two elements... My question, yeah. My question. Yes, which is indispensable parties. Well, I just asked you here now this question. Answer my question first. I'm sorry, could you repeat the question? You didn't hear it? You didn't hear the question? I thought it was focused on indispensable parties. Go ahead, since you didn't hear it. You argue the case the way you want, since you didn't hear my question. If I understood your question, it was focused on indispensable parties under Rule 19, and I think... What I heard you ask was, doesn't the tribe need to be here? And in this case, I think the answer to that is no because the tribe voluntarily settled its claims out of the case. And so it's not like a situation where you've got an absent party who may have some interest, and there's a concern that those interests might be prejudiced in some way. Here, you have a situation where the tribe, the tribal officials, the tribal entities, Ascension and Big Picture, all voluntarily settled their claims. And in a situation like that, courts have uniformly recognized that when a party voluntarily takes themselves out of a case, there isn't a concern that their interests are going to be prejudiced because they're capable of deciding whether to remain in the case or not. And so I guess I don't think that in the abstract, there might be a concern about prejudicing interests, but here you have a case and specific facts where all of the absent parties have taken themselves voluntarily out of the case. And I think that addresses both the necessary party element of Rule 19A, which asks basically two questions. The first is, can the court award complete relief to the parties who are in the case? Here, we have a situation where there are no injunctive or declaratory relief requests in the case. This is only a case involving money damages against Mr. Martorello. So the tribe's interests there are not prejudiced and there can be an award of complete relief against the defendant. And you don't have a situation where the tribe's interests can't be protected because they settled out of the case voluntarily. And that demonstrates that they didn't feel like it was necessary to remain in the case. And I think on this point, it's just worth noting that they were fully aware that the case would proceed independently against Mr. Martorello. In the settlement agreement itself, that was a part of the agreement. And not only were they aware that this case would continue on against Mr. Martorello, but in the settlement agreement, they agreed to assist the plaintiffs in their prosecution of their claims against the remaining defendant. And so I think, as courts have said, it would be inappropriate to allow a party who remains in the case to champion the interests of an absent party when that absent party has voluntarily chosen to take themselves out of the case. Does Mr. Martorello have any remedy against the settling parties? Against the tribe? No, Your Honor. There is nothing in the settlement agreement or anything that certainly is in the record in this case that suggests any kind of remedy against the tribes. And I think, if I'm understanding Your Honor's question... Well, was Mr. Martorello a party to the settlement agreement? No, he was not a party to the settlement agreement. So he could not have waived any rights he may have? That's correct, Your Honor. This is the kind of situation that comes up actually with some regularity, and it's the joint tort-feasor problem. And what courts have said in the context of a joint tort-feasor case is that Rule 19 isn't implicated when there might be one of several joint tort-feasors who is not in the case. So I think any potential downstream consequences of a judgment here isn't implicated when you're asking a question about either necessary parties under Rule 19A or indispensable parties under Rule 19B. And there just should matter. Now the one thing that... And I haven't heard... I don't think in the briefing Mr. Martorello didn't make any argument about that possibility. The only argument he made in support of his Rule 19B indispensable party claim was that there might be economic interests of the tribe that would be affected. But that isn't actually... there isn't anything in 19B that suggests that economic interests of the absent party are sufficient to justify what he's asking for here, which is complete dismissal of the case at all. And the tribe is free to continue lending in whatever way it sees fit. This case and the claims against Mr. Martorello don't run at all to the tribe or to the tribal officials or to the tribal entities. And so it really is independent of anything that the tribe might want to do in the future. If I could turn briefly to Mr. Martorello's third argument, which is an invitation to the court to impose a mistake of law defense in a civil RICO claim, there is no case that has ever adopted that requirement. And I think there's a good reason for that. It's because the plain language of RICO does not permit a court to engraft onto either 1962 or 1964 a requirement that in a civil context, a defendant has to be shown to know that his conduct was unlawful. The keystone case, I think, that sets the framework for this, there's actually two. One from the Supreme Court is a case called German where the court said when Congress intends to provide for a mistake of law defense to civil liability, it does that explicitly. And it said in that case it must employ language like actual knowledge or knowledge fairly implied. And there are examples of this in the U.S. Code where there's a civil statute that imposes liability for civil penalties where Congress has expressly required a heightened knowledge requirement. But RICO doesn't have anything in the statute that comes even remotely close to that. It's much more similar to another racketeering provision, section 1955, which this court addressed in U.S. versus Lawson. And in that case, the defendant made, that was a criminal case, so it's even a different context than what we're talking about here. But in that case this court addressed a defendant's argument that under section 1955 the government was required to prove knowledge that the underlying conduct in a predicate state law offense was unlawful. And this court rejected that argument and it said we begin and we end really with the plain text of the statute. And if the statute doesn't impose such a requirement we're not free to introduce it into the statute without Congress actually doing it. So hypothetically, if the state required you to be 18 years old to enter a contract for debt and in fact the person lied about it and they really were 16 but they signed it and you loaned them money, then you could be subject to RICO, right? And you're not knowing anything about the person's age. Simply just because the loan was unlawful? Is that your position? Well, no. I think the facts matter here too. And I guess I just have a question about that hypothetical. What's the nature of the underlying state law violation? I just told you that hypothetically you cannot enter into the contract to assume debt or credit unless you're 18 years old. The person in fact lied and they're 16. So that makes it unlawful. So if you're reading RICO, it means all it requires for it to be an unlawful debt. Whether you knew it or not you're saying that you'd be liable. I just want to make sure. Let's get that structure of my question first. Are you saying that that's right based on the way you read RICO? Under my hypo hypothetical, you could be guilty of RICO even if you say, I had no idea the person was 16 years old. It doesn't matter. To enter it doesn't matter. What is it then? That's correct. RICO is a general intent statute. General? General intent, yes. And so we are not in a world where what we're talking about is strict liability. What's required is that you have to be able to prove knowledge of the basic facts of the enterprise or of the conspiracy to trigger liability under RICO. There's no conspiracy here other than the fact that the loans you said were too high. The interest. If you believe that you weren't required to follow that, instead you could use a different law. What's the difference? There's no different real scenario other than that? That's why RICO is overused anyway. It really was for people involved in organized crime and then it morphed into now whenever you want to be more punitive you charge RICO sometimes. But anyway, tell me why then all you have to show is what? What do you have to show for RICO for knowledge? Judge, yes, can I answer the question? Absolutely. Yeah, so I mean you have to show that the individual had knowledge of the basic facts surrounding the offense. So that they knew that what they were doing at some level, they have to actually know the predicate facts. They knew what was legal. They knew they were charging too much interest? Yes. But suppose they thought that in fact legally they could do that? Well, I don't think that that's a defense to a civil RICO claim and there isn't anything in the statute that suggests it is. It's a tautology. You say, well, there's a saying to it's not strict liability and then when I say that then you say, oh, but they have to know. They have to know something, don't they? Yes, they do have to know. Yes, they absolutely have to know something. But the something here is that their loans are unlawful. No, that their loans are double the legal limit. So RICO has it defines unlawful debt in the statute in 1961 and it doesn't turn on just the violation of the underlying state predicate law. So for instance Virginia's state usury law is 12%. Let's say there was someone was lending at 13%. That would not trigger a RICO violation. RICO has built in a safeguard for the kind of What's the margin of error then? Plus or minus what? So what the definition in RICO is double the legal limit. So it does not do what I think Mr. Martorello is attempting to say it does which is trigger liability for innocent mistakes or any other kind of conduct where you don't know. You have to be lending at double the legal limit of the state law to trigger liability under RICO and I think that takes care of the kind of innocent mistake concern that might be at play in some context. But if I could just spend 10 seconds summing up here I think the key takeaway that I would urge this court to have here is that there isn't a single court anywhere in the country that has suggested that civil RICO requires proof that a defendant has knowledge that their conduct is unlawful and so this court, what Mr. Martorello is asking this court to do is to adopt that for the first time and not even in the criminal context but in a case that only raises civil claims. Mr. Wessler I just want understand your position with respect to knowledge I thought I heard you say that the defendant needs to know that in this case that charging interest at double the rate of whatever the interest rate is by statute has to know that that's unlawful but doesn't that require some knowledge of what the legal rate is? I did not mean to suggest that the defendant needs to know that the lending is unlawful under state law. That isn't a requirement under RICO. It would be a requirement if the statute included specific knowledge requirements. The defendant needs to know is the facts of their lending. They need to know the interest rates of their lending and they need to know that they are offering these loans at a specific percentage and if that percentage is in fact over the double, is more than double the legal limit of the state they can, if the other predicate elements are met be held accountable under RICO. Unless the court has any further questions. Thank you. Mr. Gordon. Chief Judge Diaz. I want to pick up on your recollection which is correct that in the credit card context all of the banks incorporated in South Dakota because South Dakota allowed high interest rates and those interest rates have been upheld because they were legal in South Dakota and that's what Marquette said so the court is exactly right and Hengel does not establish a contrary rule that says when it's an Indian lender it's always the law of the state where the borrower resides. That would stand established law on its head and would put Indian lenders Indian tribes in a worse position and moreover it would allow states to control commerce with Indian tribes which the constitution says they can't do. The constitution says only the federal government can do that and the federal government has not chosen to regulate internet lending. Further, to tie that in to RICO according to other counsel if the lender in South Dakota makes a loan if it's a non-Indian lender thinking that South Dakota law applies and it's perfectly legal under South Dakota law but it turns out to be illegal under Virginia law and more than twice the rate, ipso facto that lender is guilty of violating RICO and can get the punitive sanctions of RICO. In other words according to counsel it is a strict liability offense that is not the case. RICO is not strict liability and it requires under the Supreme Court's precedence and the Supreme Court's precedence here, the counsel cites is German but that's a purely civil case. We have here a statute that has civil and criminal aspects to it. The offense is defined uniformly therefore it must it's the same definition as 1962 applies both to civil and to criminal and the issue here is what intent do you need under 1962? So whatever rule applies will apply in both the criminal and And the Supreme Court has clearly said that in that context you must know that what you're doing is unlawful and in order to be unlawful under RICO there are two elements. One that the loan in fact is unlawful and number two that the rate being charged is at least twice the enforceable rate. Here there's no proof because the court below said it wasn't necessary that Mr. Margarello satisfied either of those. Now turning if I can to Rule 19, counsel repeatedly said that the tribe voluntarily settled its claims. Not true. The tribe was not a party to the settlement agreement and the settlement agreement in so far as it covered Big Picture and Ascension didn't involve this case because they had already been ordered to be dismissed from this case pursuant to this court's 2019 decision. The counsel says all of these parties voluntarily took themselves out of the case. Not true. The tribe has never been a party to the case the tribe has never consented to anything. The counsel says that under the settlement agreement Ascension and Big Picture said oh it's fine if the case goes forward. Again that overstates what the settlement agreement said. The settlement agreement simply says because Ascension and Big Picture there's no waiver of immunity other than that necessary to enforce the agreement. What they said was that if the case went forward and if there was a need for documents they had then they would provide documents and the reason that provision is there is that because of their tribal immunity absent that sort of provision they might have been able to stonewall under cases that we've cited providing those documents. So there's been no consent by the tribal parties to this case proceeding in the sense of oh we think it's fine. I understood Mr. Wessler's argument to be that the tribe could have remained a party to this litigation or voluntarily injected itself into the litigation but it chose to seek dismissal because of sovereign immunity and then it seems odd then to say that having opted not to participate they are now necessary parties. Your Honor the tribe was never a party. Okay but I suppose they could have sought to intervene right if they thought that their rights were being impacted. But Rule 19 doesn't require that Your Honor. In fact Rule 19 sets up precisely the opposite saying that you need not intervene and that the court must consider the interests of absent parties. Moreover Big Picture and Ascension were dismissed by pursuant to this court's ruling that they had immunity. In Pimbentel the Supreme Court case that we cite the sovereign was the Republic of the Philippines and procedurally it had been included and then it was dismissed because it had immunity and then there was the Rule 19 motion and the Supreme Court in that posture said the Rule 19 motion had to be granted. That is the procedural procedurally what happened in Pimbentel and we suggest that is exactly the same situation that is now in front of the court here. Alright thank you Mr. Gordon. Thank you Your Honor. I want to thank both counsel for their arguments this morning. We'll come down and greet you and move on to our next case. Thank you. Please be seated.
judges: Albert Diaz, Roger L. Gregory, G. Steven Agee